# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH CAROLINA
### FLORENCE DIVISION

| | |
|---|---|
| DEDRICK ROBINSON, *individually and on behalf of others similarly situated,*<br><br>*Plaintiff,*<br><br>v.<br><br>DEVERUS, INC.,<br><br>*Defendant.* | Case No. _____<br><br>**JURY TRIAL DEMANDED** |

## CLASS ACTION COMPLAINT

Plaintiff Dedrick Robinson, on behalf of himself and all others similarly situated, complains and alleges against Defendant, Deverus, Inc. ("Deverus") as follows:

1. This is a case about a consumer reporting agency's willful failure to follow federal law governing the content of consumer reports.

2. Specifically, Deverus has failed to abide by the Fair Credit Reporting Act's ("FCRA") explicit prohibitions on including adverse information that is older than seven years in its consumer reports. 15 U.S.C. § 1681c(a)(2), (5). Deverus routinely assembles consumer reports that include old dismissed charges. This is in clear violation of the FCRA.

3. Employers, lenders, and landlords use consumer reports to screen applicants, borrowers, and tenants. They use the reports to deny people jobs, credit, housing, and access to other means by which to live.

4. In a pattern and practice of related violations, Deverus has unlawfully placed its business interests above the rights of consumers.

5. Based on Deverus's conduct, Plaintiff asserts FCRA claims on behalf of himself and a class of consumers more particularly described below (hereafter, the "Class"). On behalf of

himself and the Class, Plaintiff seeks statutory damages, punitive damages, attorneys' fees, expenses, costs, and all available other appropriate relief.

## I. PARTIES

6. Plaintiff and class representative Dedrick Robinson is a resident of Pageland, Chesterfield County, South Carolina. He has resided in South Carolina at all times in the five years prior to the filing of this complaint.

7. Defendant Deverus, Inc. is a Delaware corporation headquartered in Austin, Travis County, Texas. Deverus boasts that it delivers its "services to over 35,000 businesses per year."

8. Deverus is a consumer reporting agency within the meaning of the FCRA because for monetary fees, it engages in the practice of evaluating and/or assembling information on consumers for the purpose of furnishing consumer reports to third parties and uses interstate commerce, including the Internet, for the purpose of preparing and furnishing such reports.

9. Deverus provides consumer reports to other consumer reporting agencies who, in turn, provide reports to end users for, among other purposes, employment purposes. In short, Deverus sells criminal background data and information to other consumer reporting agencies who then sell that information to employers to use in making decisions about whether to offer a job to applicants.

## II. JURISDICTION AND VENUE

10. This Court has subject matter jurisdiction over Plaintiff's and the Class's claims.

11. This Court can exercise personal jurisdiction over Deverus because Deverus has continuous and systematic contacts with South Carolina and purposefully availed itself of the privilege of conducting activities within this state, Defendant knew that harm stemming from its illegal actions would be experienced in South Carolina, Plaintiff's claims arise out of and relate to Deverus's forum conduct, and the exercise of jurisdiction is reasonable under the circumstances.

12. Venue is proper in this court because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

### III. STATUTORY BACKGROUND

13. The FCRA was enacted based on Congress's findings that "[c]onsumer reporting agencies have assumed a vital role in assembling and evaluating consumer credit and other information on consumers" and that there is a "need to ensure that consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy." 15 U.S.C. § 1681. Thus, the FCRA requires consumer reporting agencies to operate "in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information." *Id*.

14. To ensure that consumer reporting agencies report information in a manner which is "fair and equitable to the consumer," and "with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information," the FCRA prohibits consumer reporting agencies from reporting adverse information which is more than seven years old. Specifically, agencies are forbidden from reporting the following:

> (2) Civil suits, civil judgments, and records of arrest that from date of entry, antedate the report by more than seven years or until the governing statute of limitations has expired, whichever is the longer period…
>
> (5) Any other adverse item of information, other than records of convictions of crimes which antedates the report by more than seven years.

15 U.S.C. § 1681c(a).

15. Deverus systematically and purposefully disregards its "grave responsibilities" and reports outdated adverse information on consumers in violation of the FCRA.

### IV. STATEMENT OF FACTS

**A. Plaintiff applied for a job through StaffMasters and was rejected based on the contents of his background report.**

16. In or around January of 2014, Plaintiff applied for a job through StaffMasters, Inc. ("StaffMasters"), a staffing agency in which operates throughout North and South Carolina. Plaintiff resides, and at the time did reside, in Chesterfield County. Any position for which

StaffMasters would have considered Mr. Robinson did not and could not reasonably be expected to pay $75,000 or more per year.

17. As part of its standard application procedure, on or about January 15, 2014, StaffMasters purchased a consumer report on Plaintiff from a company called S2Verify, LLC ("S2Verify"). S2Verify, a customer-facing company, partners with Deverus, which specializes in data assembly, to provide background checks.

18. The consumer report that S2Verify sold regarding Mr. Robinson contained information, assembled and furnished by Deverus, that the FCRA mandates be excluded from reports after seven years. Under the FCRA, any "records of arrest" or "other adverse item of information, other than records of convictions of crimes" cannot legally be included on a consumer report if such records or adverse items of information predate the report by seven years. 15 U.S.C. § 1681c(a)(2), (5).

19. In spite of the FCRA's clear prohibition on including non-conviction information older than seven years on background reports, the report that was sent to StaffMasters included a Chesterfield County, South Carolina criminal charge from 1996, which the prosecutor had formally dropped, as well as a separate criminal charge from 2003, of which Mr. Robinson had been found not guilty.

20. Despite the fact that Mr. Robinson had the necessary qualifications and experience for jobs available through StaffMasters, as a result of the information disclosed in the consumer report, StaffMasters was not able to place Mr. Robinson in a job.

21. StaffMasters provided Mr. Robinson with a copy of his consumer report from S2Verify. The copy of the report had S2Verify's name and logo at the top. The identity and involvement of Deverus were not disclosed to Mr. Robinson, nor did Mr. Robinson have any means to discover Deverus's identity or involvement.

22. On June 16, 2015, Regmon Hawkins, a California resident who had similarly been denied employment because of outdated adverse information in an S2Verify consumer report, sued S2Verify for illegally including outdated information in his criminal report, in Cause No. 3:15-cv-

03502-WHA, in the U.S. District Court for the Northern District of California ("S2Verify Litigation"). That lawsuit was certified as a class action on behalf of a class of persons who were the subjects of S2Verify reports provided to certain companies, including StaffMasters, and whose reports contained outdated adverse information. The case eventually settled, providing more than $759,000 to more than 4,200 consumers who were affected by S2Verify's illegal reports. (*See* S2Verify Litigation, Final Approval Order, Dkt. 120.)

23. Mr. Robinson was a member of the certified class in the S2Verify Litigation.

24. Mr. Robinson was notified of the S2Verify Litigation by a court-approved notice of the class certification, which was mailed on or about September 6, 2018.

25. Mr. Robinson released his claims against S2Verify in connection with the S2Verify litigation, but the release did not affect any claims against Deverus.

**B.  Deverus's Business Model**

26. Companies like S2Verify sell background reporting services to employers ("end-users," in the parlance of the FCRA).

27. While it is economical for many companies to sell background reporting services to employers (because the process of *selling* background report services is still relationship-driven, not data-intensive, and not automated), many of those companies, like S2Verify, outsource the function of creating, assembling, and furnishing those reports to third parties, like Deverus.

28. While the customers (and the consumers who are the subject of the reports) may believe they are buying a consumer report from the company that sold them the background check service (like S2Verify), in reality, they are receiving a report that was assembled and transmitted by another company altogether (like Deverus).

29. Consumer reports often contain data from a variety of sources from around the United States. Some of the sources are companies who specialize in pulling records from courthouses and who do so in real time, in response to specific requests. Other sources are static databases which serve as (often stale) fixed repositories of already published public record information. A given

consumer report may contain information gleaned from dozens geographically specific sources. Each of those sources likely has its own conventions in terms data formatting.

30. All of the data from those disparate data sources needs to be assembled and formatted into a single document before it is presented to an employer/end-user for review.

31. Much of the demand for criminal background reports is driven by the desire for quick turnaround times. The process of procuring and assembling data from a variety of sources can be laborious and time intensive, meaning that companies selling consumer reports gain significant sales advantages if they are able to quickly send requests out to their sources and then quickly assemble the results from their sources for provision to the end-user.

32. Deverus provides a technological platform that allows its partners, like S2Verify, to quickly procure and assemble data from a variety of sources about a given individual into a formatted consumer report.

33. Deverus's platform allows its partners, like S2Verify, to either contract with their own data sources (who then upload data onto Deverus's platform for assembly) or to contract with Deverus directly to use data from Deverus's own pre-selected sources, which Deverus calls is "data partners." One of Deverus's key data partners is Experian, one of the nation's "Big Three" credit reporting agencies. (*See* https://www.ftc.gov/news-events/press-releases/2000/01/nations-big-three-consumer-reporting-agencies-agree-pay-25) (last accessed December 7, 2017.) Experian maintains its North American headquarters in Costa Mesa, California. (*See* http://www.experian.com/corporate/experian-locations.html.)

34. Deverus touts the use of its "data partners" as follows: "The best thing about using an integrated information provider is the quick return time. It's faster, much faster. Once the order is entered it goes straight to the providers and depending on the search type, sometimes is returned in minutes, not hours. Automation and integration means faster return times." http://www.deverus.com/the-platform/integration-manager (site last visited August 30, 2018). Deverus maintains an integrated platform with Experian, as well as other data partners, to facilitate quicker data transfer to its partners (including S2Verify).

35. Deverus's customers can also mix-and-match, including some data in their reports which comes from researchers whom they hire to upload data into Deverus's system and some data in their reports which comes from Deverus's own integrated data partners.

36. In the latter circumstance, Deverus's clients pay Deverus not only for the service of assembling and furnishing the reports, but also for the provision of the data which populates the reports. While many of Deverus's data partners sell data directly to companies like S2Verify, when Deverus's clients use Deverus's data partners, Deverus sells access to that data at a markup.

37. Despite its active role in procuring information for consumer reports, selling that information, assembling that information into a formatted report, and transmitting those reports to end-users, Deverus performs no "quality assurance" whatsoever on the data it sells and transmits.

38. Despite its highly automated and technologically sophisticated methods for assembling and normalizing data from disparate sources, Deverus makes no effort whatsoever to exclude non-conviction data older than seven years from its reports. This failure stands in sharp contrast to the algorithms that are routinely used in the consumer reporting industry to ensure that non-conviction data older than seven years is suppressed.

39. Instead of undertaking its own compliance methods, Deverus purports to make the ability to perform quality assurance available to its partners. However, there is no requirement in Deverus's system that Deverus's partners perform any quality assurance whatsoever.

40. In fact, Deverus's system allows its clients to set technological parameters so that the assembled data is never reviewed by any human being at all before it is provided to employers who will make decisions about whether to hire people based on that information.

41. Deverus uses the fact that its system allows data to be sent directly to an end user with no quality assurance being performed whatsoever as a selling point, because it decreases turn around time on reports. "When you use an integrated information provider, requests will go straight to the providers along with any status updates, requests for more information, notes, etc. You'll also [sic] the results delivered right into your platform. And based on your custom quality

assurance settings, those results can go to QA ["Quality Assurance"] or directly to your clients." (http://www.deverus.com/the-platform/integration-manager site, last visited August 30, 2018)

42. Deverus does not exercise any control over its customers' quality control procedures. For instance, if Deverus's client's parameters allow criminal record information—even that which violates the FCRA—to be sent automatically to an end user without undergoing any quality assurance, Deverus honors its partner's request.

43. Deverus has full access to final reports that are assembled on its platform by its clients.

44. In many instances, Deverus provides the final reports directly to end-user employers, often through electronic integrations with those end-user/employers' applicant tracking systems.

45. Deverus, therefore, knows that many of the reports it provides to end-users, such as Plaintiff's report, contain non-conviction information which is older than seven years and which plainly violates the FCRA.

46. In spite of this knowledge, Deverus continues to provide this information and continues to fail to perform any quality assurance or compliance measures whatsoever.

47. Consistent with the foregoing practices, in this case the obsolete, non-conviction criminal information on Plaintiff's report came from Experian, one of Deverus's key data partners.

48. With respect to its partner S2Verify, Deverus had access to, and direct knowledge of, the requirements of S2Verify's end-user clients (including StaffMasters). StaffMasters requested that the reports it purchased from S2Verify (assembled by Deverus) contain all criminal history information of a given individual, even if inclusion of that information would violate the FCRA.

49. Per its procedures, Deverus assembled Plaintiff's report for the purpose of providing it to StaffMasters, but performed no quality assurance or compliance measures as to S2Verify, StaffMasters, or any other downstream user of Deverus's consumer data.

## V.  CLASS ACTION ALLEGATIONS

50. Plaintiff asserts his claim for relief against Deverus on behalf of himself and the Class defined as follows:

**Class:** All persons residing in the United States (including all territories and other political subdivisions of the United States) who were the subject of a consumer report furnished to a third party by Deverus, Inc. ("Deverus") which includes an entry for an offense where the date of the earlier of the arrest date, file date, offense date, disposition date or charge date, antedates the date of the report by more than seven years and where the disposition is one of those listed on the List of Dispositions attached hereto as Exhibit A. The Class consists of all persons who satisfy this criterion and who were the subject of a consumer report furnished by Deverus at any time which occurred between the date which is five years prior to the filing of the initial Complaint in this action and the date of final judgment in this action, or such earlier class end date as shall be established by the Court.

51. **Numerosity**. FED. R. CIV. P. 23(a)(1). The Class is so numerous that joinder of all class members is impracticable. Deverus regularly furnishes consumer reports that impermissibly include information about charges that are older than allowed by the FCRA. The number of members in the Class exceeds 100 and can be ascertained from Deverus's own records.

52. **Typicality**. FED. R. CIV. P. 23(a)(3). Plaintiff's claims are typical of the members of the Class. The FCRA violations suffered by Plaintiff are typical of those suffered by other class members, and Deverus treated Plaintiff consistent with other class members in accordance with its standard policies and practices.

53. **Adequacy**. FED. R. CIV. P. 23(a)(4). Plaintiff will fairly and adequately protect the interests of the Class and has retained counsel experienced in complex class action litigation. Plaintiff has no interests that conflict with those of any class members.

54. **Commonality**. FED. R. CIV. P. 23(a)(2). Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class, including but not limited to:

   a) Whether Deverus violated the FCRA by reporting non-conviction criminal history information which is over seven years old;
   b) Whether Deverus's violations of the FCRA were willful;
   c) The proper measure of statutory damages; and
   d) The proper measure of punitive damages.

55. **Predominance**. FED. R. CIV. P. 23(b)(3). Class certification is also appropriate under FED. R. CIV. P. 23(b)(3) because questions of law and fact common to the Class predominate over any questions affecting only individual members of the Class, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation. The Defendant's conduct described in this Class Action Complaint stems from common and uniform policies and practices, resulting in common violations of the FCRA. Members of the Class do not have an interest in pursuing separate actions against Defendant, as the amount of each Class member's individual claim is small compared to the expense and burden of individual prosecution, and Plaintiff is unaware of any similar claims brought against Defendant by any members of the Class on an individual basis. Class certification also will obviate the need for unduly duplicative litigation that might result in inconsistent judgments concerning Defendant's practices. Moreover, management of this action as a class action will not present any likely difficulties.

## VI.  CLAIM FOR RELIEF

## COUNT ONE – 15 U.S.C. § 1681c(a)

### *On Behalf of the Class*

56. Plaintiff realleges and incorporates the allegations set forth above.

57. The reports that Deverus provides constitute "consumer reports" under 15 U.S.C. 1681a(d)(1) because they unquestionably "bear[] on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for credit or insurance to be used primarily for personal, family, or household purposes, employment purposes, or any other purpose authorized by section [15 U.S.C. 1681b]."

58. Deverus is a "consumer reporting agency" under 15 U.S.C. 1681(f) because for monetary fees, it "engages in the practice of assembling and/or evaluating information on

consumers for the purpose of furnishing consumer reports to third parties, and uses interstate commerce, including the Internet, for the purpose of preparing and furnishing such reports.

59. As a consumer reporting agency, Deverus is required to comply with all provisions of the FCRA.

60. By assembling reports on consumers which are intended to be furnished to third parties, Deverus has engaged in activity qualifying it as a "consumer reporting agency" under the FCRA.

61. The consumer reports of the Plaintiff and Class members provided by Deverus included dismissed charges, records of arrest, and other adverse items of information other than records of convictions of crimes that antedated the report by more than seven years. By failing to limit its reporting of non-conviction information to those instances that were seven years or less prior to the date of the report, Deverus violated 15 U.S.C. 1681c(a).

62. Consumer reporting agencies are clearly permitted to report records of "convictions" beyond seven years. *Id*. But it is equally clear from the face of the same statutory provision that "arrests" and any "other adverse item of information" cannot be reported beyond seven years. *See* 15 U.S.C. §§ 1681c(a)(2) and 1681c(a)(5); *see also Avila v. NOW Health Grp., Inc.*, No. 14 C 1551, 2014 WL 3537825, at *3-*4 (N.D. Ill. July 17, 2014) (holding that the "express language of the FCRA" mandates that "a consumer reporting agency may not include any adverse item of information other than a 'record of conviction' not a 'record of dismissed charges'"); *Haley v. Talentwise, Inc.*, --- F. Supp. 2d ---, 2014 WL 1304007, at *3-5 (W.D. Wash., April 2, 2014) (finding that under the "plain language" of the FCRA, a "dismissed charge from over seven years ago is both a 'record of arrest' and 'adverse' information that [a consumer reporting agency] is prohibited from including in [a] consumer report") (citing *Serrano v. Sterling Testing Syst.*, 557 F. Supp. 2d 688, 693 (E.D. Penn. 2008)); *Dunford v. Am. DataBank, LLC*, No. C 13-03829 WHA, 2014 WL 3956774, at *14 (N.D. Cal. Aug. 12, 2014) ("In light of the remedial purpose of the Act, this order now holds that only the actual convictions may be reported and stale dismissed counts must be combed out and go unreported."); *Dowell v. Gen. Info. Servs, Inc.*, 13-CV-02581-L-BGS,

Memorandum of the United States of America in Support of the Constitutionality of § 1681c of the Fair Credit Reporting Act, at 17 (S.D. Cal. Feb. 20, 2014) (stating that dismissed charges, even if associated with a conviction, may not be reported under the FCRA). Notwithstanding this clear statutory directive, Deverus routinely reports dismissed charges that antedate the report by more than seven years.

63. Deverus's practices violate a fundamental protection afforded to consumers under the FCRA, are contrary to the unambiguous language of the statute, and are counter to longstanding judicial and regulatory guidance. *See, e.g.*, FTC, Forty Years of Experience with the Fair Credit Reporting Act, An FTC Staff Report with Summary of Interpretations, July 2011, at 55 ("Even if no specific adverse item is reported, a CRA may not furnish a consumer report referencing the existence of adverse information that predates the times set forth in this subsection."); *Serrano v. Sterling Testing Sys., Inc.*, 557 F. Supp. 2d 688 (E.D. Pa. 2008) (holding FCRA prohibits even alluding to existence of unreportable adverse information).

64. The foregoing violations were willful. Deverus acted in deliberate or reckless disregard of its obligations and the rights of Plaintiff and the Class members under 15 U.S.C. § 1681c(a). Deverus's willful conduct is reflected, *inter alia*, by the allegations set forth above and the following:

  a) The FCRA was enacted in 1970; Deverus has had its entire existence to become compliant;

  b) By assembling data on consumers that it had already purchased, and providing this to its partners based solely on its partner's specifications (even if those specifications plainly called for blatant FCRA violations), Deverus turned a blind eye to its obligations under the FCRA;

  c) Deverus is a company which specializes in furnishing consumer reports and has access to legal advice. Yet, there is no contemporaneous evidence that Deverus determined that its conduct was lawful; and

d) Despite the plain statutory text and there being a depth of guidance, Deverus adopted a policy of systematically reporting dismissed charges that antedated the report by more than seven years. By adopting such a policy, Deverus voluntarily ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless.

65. Plaintiff and the Class are entitled to statutory damages of not less than $100 and not more than $1,000 for each and every one of these violations pursuant to 15 U.S.C. § 1681n(a)(1)(A). Plaintiff and the Class are entitled to such amount of punitive damages as the Court may allow pursuant to 15 U.S.C. § 1681n(a)(2).

Plaintiff and the Class are further entitled to recover their costs and attorneys' fees pursuant to 15 U.S.C. § 1681n(a)(3).

## VII. JURY DEMAND

Plaintiff demands a trial by jury on all issues.

## VIII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself and the Class, prays for relief as follows:

a) Determining that this action may proceed as a class action under Rule 23(b)(3) of the Federal Rules of Civil Procedure;

b) Designating Dedrick Robinson as class representative and designating his counsel as counsel for the Class;

c) Issuing proper notice to the Class;

d) Declaring that Deverus committed multiple, separate violations of the FCRA;

e) Declaring that Deverus acted willfully in deliberate or reckless disregard of the Class's rights and their obligations under the FCRA;

f) Awarding statutory damages and punitive damages as provided by the FCRA;

g) Awarding reasonable attorneys' fees and costs as provided by the FCRA; and

h) Granting other and further relief, in law or equity, as this Court may deem appropriate and just.

Dated: August 31, 2018                                  Respectfully submitted,

By: */s/ Lance V. Oliver*
Lance V. Oliver
loliver@motleyrice.com
T. David Hoyle
dhoyle@motleyrice.com
MOTLEY RICE LLC
28 Bridgeside Boulevard
Mount Pleasant, SC 29464
Tel.: (843) 216-9000
Fax: (843) 216-9450


Michael A. Caddell (SBN 249469)
mac@caddellchapman.com
Cynthia B. Chapman (SBN 164471)
cbc@caddellchapman.com
Amy E. Tabor (SBN 297660)
aet@caddellchapman.com
CADDELL & CHAPMAN
628 East 9th Street
Houston TX 77007-1722
Tel.: (713) 751-0400
Fax: (713) 751-0906

*Attorneys for Plaintiff*